**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JESSICA J. ANDRES,

|  |  |
|---|---|
| *Plaintiff*, | CASE NO. 18-CV-10203 |
|  | DISTRICT JUDGE MATTHEW F. LEITMAN |
| *v.* | MAGISTRATE JUDGE PATRICIA T. MORRIS |

NEW LOTHROP AREA PUBLIC SCHOOLS,
CHESANING UNION SCHOOLS,
SOVIS INSURANCE AGENCY,
EMPLOYERS MUTUAL CASUALTY COMPANY,

     *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTIONS TO DISMISS**
**AND MOTIONS FOR SUMMARY JUDGMENT (Docs.11, 22, 28, 36)**

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motions to dismiss from defendants New Lothrop Area Public Schools, (Doc. 11), Employers Mutual Casualty Company, (Doc. 22), Sovis Insurance Agency, (Doc. 28), and Chesaning Union Schools,[1] (Doc. 36), be **GRANTED**. If the Court accepts the undersigned's

---

[1] Although Chesaning Union Schools' motion is labeled in the record as a motion for summary judgment, the document's title and contents make evident that it is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and I treat it as such. (Doc. 36). Similarly, though Sovis Insurance Agency's pending motion is titled "Motion for Summary Judgment," the motion itself is based in Rule 12(b)(6); Rule 56 goes unmentioned. (Doc. 28 at PageID.213, 218-219, 230). I therefore also treat Sovis's motion as a motion to dismiss—pausing to note that Sovis has attached a single exhibit outside the pleadings, which the Court may not consider on a motion to dismiss. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008)

recommendation to grant all Defendants' pending motions, the case should be **DISMISSED** as no claims or defendants will remain.

## II.   <u>REPORT</u>

### A. Introduction

On January 17, 2018, Plaintiff Jessica J. Andres, proceeding pro se, filed a complaint alleging numerous violations of the Fair Credit Reporting Act ("FCRA") by defendants New Lothrop Area Public Schools ("NLAPS"), Employers Mutual Casualty Company ("EMC"), Sovis Insurance Agency ("Sovis"), and Chesaning Union Schools ("CUS"). Over the past few months, each defendant in the case has filed a dispositive motion. NLAPS and EMC each filed a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), (Docs. 11, 22); Sovis and CUS filed motions that are labeled in the record as motions for summary judgment, although I construe both as motions to dismiss for reasons explained *supra*, (Docs. 28, 36). Plaintiff filed a response to each motion, (Docs.16, 31, 33, 39), and each defendant filed a reply in turn, (Docs. 19, 32, 34, 40). The four dispositive motions are properly before the undersigned pursuant to the Order of Reference, (Doc. 8), and 28 U.S.C. § 636(b)(1)(B).

### B. Background

Plaintiff alleges numerous violations of the FCRA by Defendants. Because the Court must consider as true all Plaintiff's factual allegations at this stage of the pleadings, *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001), I recount the facts according to Plaintiff's complaint, (Doc. 1).

On January 18, 2016, when Plaintiff was working as a substitute bus driver for NLAPS, she attended a meeting with NLAPS Superintendent Anthony Berthiaume and Transportation Director Mary Johnson. (*Id.* at PageID.3). Berthiaume informed Plaintiff that she would not be granted a position as a permanent bus driver "because of information which had been provided . . . by Plaintiff's former employer," CUS. (*Id.*). Plaintiff later received a copy of her NLAPS and CUS personnel records, each of which contained a copy of the email at the heart of this case. (*Id.*).

The email appeared to be sent from a Sovis employee, Lisa Coon, to a CUS employee, Jill Folsom, on July 15, 2013. (*Id.*). It read, in relevant part:

> EMC advises that the MVR [Motor Vehicle Report] for Jessica J. Andres shows a violation that makes her ineligible as a driver on their policy. I believe the violation was received due to the accident in February, however due to privacy issues they will not advise the actual violation. The attached exclusion form must be signed by Jessica and you. Forward the completed, signed and dated, form to us. The driver exclusion will become [e]ffective 7/25/13 and EMC will be sending out an Endorsement to the Auto policy reflecting this exclusion.

(*Id.*).   Plaintiff notes that her employment with CUS had ended on April 26, 2013, (*id.* at PageID.5), prior to the above email. Attached to the copy of the email in her CUS personnel folder was a handwritten note reading: "J. Andres is uninsurable we can never again employ her [sic]." (*Id.*). Plaintiff had not previously been aware she had been "permanently barred from future employment" with CUS. (*Id.*).

In mid-April 2016, Plaintiff and her husband met with CUS Superintendent Mike McGough, who explained that CUS had sent a copy of the email to NLAPS in late 2015 as part of a response to an Unprofessional Conduct Request for Information. (*Id.*). Soon after,

McGough told Plaintiff's husband by phone that he knew that Plaintiff's February 19, 2013, automobile accident was the basis for her exclusion because he had been "party to a phone conversation where it was confirmed." (*Id.* at PageID.4). He declined to name who had revealed that information. (*Id.*). CUS had not reported the 2013 accident in response to a previous Unprofessional Conduct Request for Information from NLAPS, and McGough explained that "the information in the Sovis email was [the] reason that CUS had decided to report" the accident. (*Id.*).

Plaintiff states the 2015 Unprofessional Conduct Request for Information form was created "without her knowledge or consent," and points to the misspelling of her maiden name and lack of an accompanying Authorization, Waiver, and Release form with her signature. (*Id.*). Her efforts to determine who created the form have proved fruitless. (*Id.* at PageID.4-5).

Finally, Plaintiff alleges various financial and emotional injuries, including financial loss because NLAPS denied her a permanent bus driver position and harm to her "ability to pursue other employment opportunities"; Plaintiff explains she is "unwilling to apply for employment with other public schools since discovering that she has been cited as having committed unprofessional conduct." (*Id.* at PageID.7). Further, because her children attend NLAPS, she experiences "emotional distress and anxiety" at school events, which has caused her "to avoid attending some of those activities." (*Id.* at PageID.8). She also describes overhearing a comment made by the NLAPS Bus Coordinator to other NLAPS employees that Plaintiff "didn't get hired because she's a bitch." (*Id.*).

### C.  Motion To Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint, determining whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee*, 272 F.3d at 360. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were

"conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Where, as here, a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### D. Analysis

Congress enacted the FCRA in recognition, in relevant part, of consumer reporting agencies' "vital role in assembling and evaluating consumer credit and other information on consumers," and the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a). The Supreme Court has recognized that the FCRA exists to

"curb the dissemination of false information by adopting procedures designed to decrease that risk." In *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1550 (2016),

To that end, the FCRA provides a means for consumers to maintain a private cause of action based on certain FCRA violations by way of § 1681n and § 1681o. Section 1681n provides that

> [a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . .
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

A defendant violates the FCRA "willfully" when it does so either intentionally or recklessly; a reckless act entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57, 68 (2007).

Section 1681o, on the other hand, makes liable to the consumer "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer." 15 U.S.C. § 1681 at § 1681o(a).

In this case, Plaintiff levies identical claims against each defendant under § 1681n, alleging each

> willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. § 681 et seq., including but not limited to:

7

(a) failing to provide Plaintiff a copy of her MVR as well as a written description of her consumer rights before taking adverse action(s) based in whole or in part on information in that MVR as required by 15 U.S.C. § 1681b(b)(3)(A);

(b) failing to provide Plaintiff notice of adverse action(s) as required by 15 U.S.C. § 1681m(a)(1);

(c) failing to provide Plaintiff written or electronic disclosure(s) related to adverse action(s) as required by 15 U.S.C. § 1681m(a)(2)

(d) failing to provide Plaintiff an oral, written or electronic disclosure(s) as required by 15 U.S.C. § 1681m(a)(4);

(e) failing to provide Plaintiff an oral, written or electronic notice of her consumer rights as required by 15 U.S.C. § 1681m(a)(4).

(Doc. 1 at PageID.8-14).

Plaintiff repeats this language verbatim in her claims against each defendant under § 1681o, only substituting the word "negligently" for "willfully." (PageID.9-14).

### a. Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to hear actual cases and controversies. U.S. Const. art 3, § 2. The analysis of whether a plaintiff has standing to bring suit assists in defining the contours of this constitutional limitation. A plaintiff bears the burden of establishing that she has standing to file suit. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Standing requires that a plaintiff establish that: (1) she suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the defendant's alleged

wrongdoing; and (3) an injury that can likely be redressed. *Lujan v. Defs. of Wildlife*, 504 U.S. 95, 101, (1983).

Here, Defendant EMC argues that Plaintiff lacks standing because she fails to allege an injury-in-fact proximately caused by the alleged FCRA violations. (Doc. 22 at PageID.179-183). Plaintiff answers that she has alleged concrete injuries: the loss of a potential position as a permanent bus driver position that "would have resulted in hundreds of dollars in additional earnings," as well as "damage to her reputation, emotional turmoil, emotional distress, and anxiety." (Doc. 31 at PageID.256).

The Court is not unsympathetic to Plaintiff's losses. However, to confer standing the injury must be causally connected to the defendants' alleged wrongdoing. Plaintiff alleges willful and negligent violations of § 1681b(b)(3)(A) and § 1681m(a)(1), (2), (3), and (4) by each defendant. (Doc. 1 at PageID.8-14). Broadly speaking, all relevant provisions mandate certain informational disclosures to the consumer in the case of adverse action taken against the consumer.

Specifically, § 1681b(b)(3)(A) provides that

Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3)(A).

9

Similarly, the relevant sections of § 1681m provide:

If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall—

(1) provide oral, written, or electronic notice of the adverse action to the consumer;

(2) provide to the consumer written or electronic disclosure—(A) of a numerical credit score . . . used by such person in taking any adverse action based in whole or in part on any information in a consumer report; and (B) of the information set forth in subparagraphs (B) through (E) of section 1681g(f)(1) of this title;

(3) provide to the consumer orally, in writing, or electronically—(A) the name, address, and telephone number of the consumer reporting agency . . . that furnished the report to the person; and (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken . . . .

(4) provide to the consumer an oral, written, or electronic notice of the consumer's right—(A) to obtain . . . a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (3), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and (B) to dispute . . . with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

15 U.S.C.A. § 1681m(a)(1)–(4).

Thus, Plaintiff's claims are based entirely on Defendants' failures to make FCRA-mandated informational disclosures to her, and she must allege an injury stemming from those violations to create standing. Plaintiff does say Defendants' purported violations caused her to be "prevented from disputing the accuracy of her MVR information in a timely manner." (Doc. 1 at PageID.7). But she does not allege that she had any basis for challenging the information in the MVR or the email, that the information was in any way

incorrect or taken out of context, or that she *would* have sought to challenge or contextualize it, had she received the proper disclosures. And nowhere in her complaint does Plaintiff suggest she would be differently situated, if only had she received the statutorily mandated notice—for example, she does not allege that NLAPS might have determined she was qualified for the permanent bus driver position.[2]

Nor is the statutory violation itself sufficient to confer standing. In *Spokeo*, the Supreme Court considered a plaintiff's standing under the FCRA. 136 S. Ct. 1540. The Court clarified that Congress may "identify intangible harms that meet minimum Article III requirements" but also emphasized that Congress cannot "erase Article III's standing requirements by statutorily granting the right to sue." *Spokeo*, 136 S. Ct. at 1547–49.

In addition, this circuit "has had the occasion to interpret *Spokeo* and has concluded that a statutory violation in and of itself is insufficient to establish standing." *Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017).

> [T]hough *Spokeo* allows for a bare procedural violation to create a concrete harm, the procedural violation alleged here—a violation of the state law procedure not required under the FDCPA—is not the type contemplated by *Spokeo*, which dealt with the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent. . . . Yet, the sort of harm alleged by Lyshe, namely that he would have been required to visit a notary and contact Appellees to obtain electronic copies of the discovery, was not the type of harm the FDCPA was designed to prevent. Moreover, Lyshe does not even allege that he suffered this harm,

---

[2] In her response to EMC's motion, Plaintiff attempts to explain her failure to allege injury, alleging that EMC refuses to provide some unspecified "information . . . possessed solely by the defendant(s)," which has "rendered her unable to determine if the information which was disseminated is inaccurate." (Doc. 31 at PageID.259). Assuming Plaintiff is referring to her own MVR, Plaintiff does not explain why she cannot procure a copy herself. Regardless, I do not consider this new allegation in my standing analysis, as "[w]hen considering whether pleadings make out a justiciable case for want of standing, our analysis must be confined to the four corners of the complaint." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 706 (6th Cir. 2015).

and concludes that he is at no risk to suffer this harm. The harm alleged is insufficient to confer standing before the federal courts.

*Lyshe*, 854 F.3d at 859.

The Sixth Circuit has affirmed the validity of its decision in *Lyshe*: "We know of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury. Although Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018). Applying these principles to the facts, the Court found that the plaintiffs failed to allege a concrete injury in fact where they complained that a letter from the defendant failed to disclose that it was a communication from a debt collector because there was no allegation that the "non-disclosure created a risk of double payment, caused anxiety, or led to any other concrete harm." *Hagy*, 882 F.3d at 622.

Here, as in *Hagy*, Plaintiff fails to allege a concrete injury in fact or material risk of harm, let alone a material risk of harm to the interests Congress sought to protect in passing the FCRA. *Cf. Macy v. GC Services Ltd. P'ship*, ___ F.3d ___, 2018 WL 3614580 (6th Cir. July 30, 2018) (finding plaintiffs satisfied the concreteness prong of the injury-in-fact requirement of Article III by alleging the defendant's purported procedural violations of the Fair Debt Collection Practices Act created a material risk of harm to the interests recognized by Congress in enacting the statute).

12

For the above reasons, I suggest that Plaintiff's allegations do not state an actual concrete injury caused by the alleged violation and that in its absence, the statutory violation alone is insufficient to confer standing. Thus, Plaintiff lacks standing to bring her claims, and I recommend her case be dismissed.

### b.  No Private Right of Actions Exists Under § 1681m

Even if the Court were to find that Plaintiff had adequately alleged an injury in fact sufficient to confer standing, Plaintiff's case is plagued by further deficiencies, including the lack of a private cause of action for violations of § 1681m. By way of § 1681n and § 1681o, Plaintiff seeks redress for multiple violations of § 1681m by each defendant. (Doc. 1 at PageID.8-14). But § 1681m(h)(8) provides that "Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section," but instead the section "shall be enforced exclusively under section 1681s of this title by the Federal agencies and official identified in that section." § 1681m(h)(8)(A)–(B).

Congress added § 1671m(h)(8) to the FCRA in 2003 as part of the Fair and Accurate Credit Transactions Act. Pub. L. No. 108-159, 117 Stat. 1952 1993 (2003). It Since then, as Defendant EMC observes, "[v]irtually every federal district court and the only federal court of appeals to interpret § 1681m(h)(8) has found it to be clear and unambiguous: the word 'section' means 'section,' and thus no private right of action exists for violations of section 1681m in its entirety." (Doc. 22 at page 16) (citing *Bourdelais v. J.P. Morgan Chase*, Civil No. 3:10CV670, 2011 WL 1306311, at *6 (E.D. Va. Apr. 1, 2011)). Defendants Sovis and Chesaning note the same. (Doc. 28 at PageID.229-230); (Doc. 36 at PageID.299-231). *See also, e.g., Perry v. First Nat'l Bank*, 459 F.3d 816, 823 (7th Cir.

13

2006); *Pearson v. Sun Loan Co. Alabama, Inc.*, Case No. 1:17-cv-523, 2017 WL 60606937 (M.D. Ala. Oct. 26, 2017), *recommendation adopted*, 2017 WL 6060164 (Dec. 5, 2017); *Davis v. American Express Prepaid Card Mgmt. Corp.*, 1:16-cv-00591, 2016 WL 4494447, at *3 (E.D. Cal. Aug. 26, 2016), *findings and recommendation adopted*, 2016 WL 7210117 (Dec. 13, 2016); *Allbris v. ADT LLC*, CASE NO. 9:14-CV-523, 2015 WL 5084231, at *6 (S.D. Fla. Aug. 28, 2015); *Tobler v. Equifax*, No. 08-CV-12610, 2009 WL 1491046, at *3 (E.D. Mich. May 27, 2009) ("Although the Sixth Circuit has yet to hold that this section has eliminated a private right of action as to the whole of 1681m, this Court is persuaded by the reasoning of the majority of federal courts which have so held."); *Bruce v. Greiger's Moto Sales, Inc.*, 422 F.Supp.2d 988, 990–91 (N.D. Ind. 2006) (collecting cases); *Harris v. Fletcher Chrysler Products, Inc.*, 458 F.Supp.2d 748 (S.D. Ind. 2006).

Plaintiff responds simply that she "believes civil actions can be brought for violations of § 1681m and that § 1681m(h)(8) pertains only to § 1681m(h)." (Doc. 33 at page 2).[3] At least one court that considered the issue has agreed. *Kubbany v. Trans Union, LLC*, Case No. 08-00320, 2009 WL 1844344, at *1 (N.D. Cal. June 10, 2009) (concluding the amendment bars actions only under subsection (h)). Although the Eastern District of Virginia also so held in 2006, *Jefferson v. Briner Inc.*, Civil Action No. 3:05-CV-652, 2006 WL 1720692 (E.D. Va. June 21, 2006), another judge in the same district later "agree[d] with the overwhelming weight of authority holding that the phrase 'this section' in §

---

[3] As Plaintiff's brief is not Bates-numbered, I use the numbers printed at the bottom of each page in citations to that document.

1681m(h)(8) refers to sections 1681m in its entirety, and thus no private right of action to enforce section 1681m exists." *Bourdelais*, 2011 WL 1306311 at *8.

I suggest this Court, too, accord with the vast majority of courts to have considered whether § 1681m(h)(8) eliminated a private cause of action for any violations of § 1681m. Plaintiff's claims under § 1681m should then be dismissed for lack of subject matter jurisdiction.

### c. Plaintiff Fails To Adequately Allege the Involvement of a Consumer Reporting Agency and Existence of a Consumer Report

Additionally, Plaintiff's claims are doomed by the fact that she fails to properly allege the existence of a consumer report, a required element of 15 U.S.C. § 1681b(b)(3)(A).

To begin, I observe Plaintiff does not allege any of the four named defendants is a consumer reporting agency. See (Doc. 1). NLAPS, Sovis, and CUS also persuasively argue that they are not consumer reporting agencies under the definition provided by the FCRA because they do not, "for monetary fees, dues, or on a cooperative nonprofit basis, regularly engage[] in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and . . . use[] any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." (Doc. 11 at PageID.86-88); (Doc. 28 at PageID.219-222); (Doc. 36 at PageID.301-303) (citing 15 U.S.C. § 1681(f)).

I note it is not quite correct to say—as NLAPS does—that *only* consumer reporting agencies may be bound by the FCRA. (Doc. 11 at PageID.88) ("[NLAPS] is not a consumer

reporting agency; therefore, it is not subject to the requirements of the Act."). Three classes of entities potentially fall within the FCRA's strictures: "(1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Nelski v. Trans. Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004). As Plaintiff observes, § 1681b(b)(3)(A) holds responsible not credit reporting agencies, but a "person" "using a consumer report for employment purposes" and "taking any adverse action based in whole or in part on the report." § 1681b(b)(3)(A). The FCRA defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* at § 1681a(b).

But the analysis cannot end there. The FCRA also lays out the definition of the term "consumer report," as used in § 1681b(b)(3)(A):

> any written, oral, or other communication of any information *by a consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes,

among other things. *Id.* at § 1681a(d)(1) (emphasis added). Thus, a consumer report cannot exist absent the involvement of a consumer reporting agency. Again, Plaintiff does not allege any of the defendants are consumer reporting agencies, either in name or in nature.

Instead, she implies that perhaps the state motor vehicle department that originally disseminated her MVR was the originating consumer reporting agency, arguing: "MVRs are considered to be consumer reports when they are sold by state motor vehicle departments for insurance underwriting purposes and contain information bearing on a

16

consumer's 'personal characteristics.'" (Doc. 1 at PageID.2). She further suggests that the *information* from her MVR remained a consumer report as it passed from the Michigan Department of State to EMC, then to Sovis, then to CUS, and finally to NLAPS. (Doc. 16 at page 5-6).

But even assuming it were the case that MVRs are consumer reports when sold by state motor vehicle departments for insurance underwriting purposes (as Plaintiff asserts), the definition of "consumer report" includes not *all* insurance underwriting, but only "credit or insurance to be used primarily for personal, family, or household purposes." 15 U.S.C. § 1681a(d)(1)(A). And Plaintiff makes no suggestion that EMC—the first party to receive the MVR from the motor vehicle department, by Plaintiff's allegations—obtained that information to issue insurance to be used primarily for personal, family, or household purposes. Rather, her complaint asserts that EMC decided only whether to insure Plaintiff under CUS's policy, as a bus driver employed by CUS. (Doc. 1 at PageID.4-5).[4] Even by Plaintiff's definition, therefore, her MVR would not be a consumer report. As Plaintiff fails to properly allege her information was a consumer report in the hands of EMC, and does not allege EMC is a consumer reporting agency, the initial link in the chain—by which Plaintiff sought to connect EMC to Sovis to CUS to NLAPS, and hold all liable—is severed. She has failed to state a claim based on § 1681b(b)(3)(A).

---

[4] In her reply to EMC, Plaintiff raises a new argument: that her MVR information was a consumer report because EMC obtained it for *employment purposes*, since "[d]eciding whether or not to insure Plaintiff under CUS's policy had the effect of 'evaluating her qualifications for retention as an employee' of CUS because EMC knew or should reasonably have known that CUS could not continue to employ her as a bus driver unless she could be insured." (Doc. 31 at page 4-5). But the Sixth Circuit "has consistently held that arguments not raised in a party's opening brief . . . are waived." *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013). I would so hold here as well.

17

For the above reasons, I suggest Plaintiff has failed to adequately allege the existence of a consumer report or involvement of a consumer reporting agency as required to state a claim under 15 U.S.C. § 1681b(b)(3)(A)—another ground that justifies dismissal of Plaintiff's case.

To the extent that Plaintiff attempts to state a claim under § 1681b(b)(2)(A)—though she does not explicitly name that provision—I suggest it would fail for the same reasons. That subsection provides that, with certain exceptions,

> a person may not procure a consumer report . . . for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A). A claim under this subsection, like § 1681b(b)(3)(A), cannot lie absent the existence of a consumer report—which, for the reasons explained above, Plaintiff has failed to adequately allege. I suggest, therefore, that any claim under § 1681b(b)(2)(A) would prove similarly unavailing.

### E. Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that the motions to dismiss from defendants New Lothrop Area Public Schools, (Doc. 11), Employers Mutual Casualty Company, (Doc. 22), Sovis Insurance Agency, (Doc. 28), and Chesaning Union Schools, (Doc. 36), be **GRANTED**. If the Court accepts this recommendation to grant all

Defendants' pending motions, the case should be **DISMISSED** as no claims or defendants shall remain.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 15, 2018                    S/ PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Jessica J. Andres at 19150 Bishop Road, New Lothrop, MI 48460.

Date: August 15, 2018                     By s/Kristen Castaneda
                                          Case Manager